Judge Mills
delivered the Opinion of the Court.
In February, 1780, a certificate from the court of commissioners for adjusting the title to unpatented lands, issued to William McNitt, as heir at law to Joseph McNitt, for 1000 acres of land, in the present county of Fayette. A pre-emption warrant was afterwards issued thereon, and an entry was made of the warrant in the name of Jacob Myers, as assignee of the warrant in 1788, and a patent was issued in 1788.
Myers conveyed away, the title, and one half the tract”, or 500 acres thereof, came by sundry mesna Conveyances to David Logan, who settled thereon.
Late in the year 1803, a suit in chancery was brought in the General Court of this State, against David Logan for the land, in the name of Bernard McNitt, who claimed to be the real heir at law of Joseph McNitt, instead of William. That court dismissed the hill. But on an appeal to this court, the decree vvas reversed, and a decree directed against David Logan for the land, in 1808, Litt. Sel. Cases 60.
The case came again to. this court, for supposed errors in carrying the decree of this court into effect. and was affirmed in 1811, Litt. Sel. Cases 119.
In 1810, when a writ of habere facias possessionem issued to give Bernard McNitt possession of the land so recovered, James Logan, a son of David, was found in possession of the land, who opposed, the execution of the writ on his possession, insisting that he was not bound by the decree of Bernard, McNitt against David, and that he held by a conveyance prior to the institution of the suit against said David by Bernard McNitt, and was not such a privy in estate as to he affected thereby. But the plaintiff in that writ proceeded to execute it upon turn, and ousted him of the possession.
Motion for restitution overruled and decision affirmed.
Richard Steele obtains the title of Bernard McNitt.
James Logan recovers the land in ejectment. Steele’s heirs appeal, but the judgment is affirmed.
Bill of Steele's heirs for the land.
He then moved to set aside the sheriff's return upon the writ, and an award of a writ of restitution. His'motion was overruled, and on an to this court, that decision was affirmed on the ground that the matter set up by him to avoid the operation of the writ, was such as ought to be tried in the usual mode of trial by jury. This decision took place at the fall term 1814, and will be found in 3 Bibb, 530.
In the mean time Bernard McNitt, in pursuance of his decree, obtained a conveyance, by a commissioner, of the title of David Logan, and the heirs of a certain Richard Steele, by a commissioner acting under a decree in chancery, obtained a conveyance from Bernard McNitt, and for the future the controversy appears in the name of Steele’s heirs and James Logan.
James Logan next brought his ejectment on his conveyance, to regain his lost possession. In defence, the heirs of Steele relied on the ground that bis deed of conveyance from David Logan was fraudulent, to avoid the claim of Berna McNitt, and that it was antedated so as to appear older than the. suit of Bernard McNitt against David Logan, when it was in fact, subsequent thereto; his deed not being recorded. The jury found for James Logan, and he accordingly obtained a verdict and judgment for the land he had lost. The heirs of Steele moved for a new trial, and spread all the evidence on record; and the judgment was affirmed by this court, in the year 1821, 3 Marsh. 394. By references to these different reported cases, there is not a feature in the controversy which can not be understood.
On the return of this last opinion to the court below, Steele’s heirs filed this bill against both David and James Logan, for the purpose of extinguishing the title of James Logan, and rely on the following grounds of equity.
1st, That the deed of conveyance from David to James Logan was fraudulent, because it was executed far the express purpose of [avoiding the title of *432 Bernard McNitt, and placing it out of his reach; and was also antidated, so as to appear older than the suit, though in fact, it was executed afterwards, which made James Logan a purchaser pendente lite.
•; the
of the court Jas to heirs.
Led of f of Steele.
2nd, That Bernard McNitt was the true heir at law of Joseph McNitt, and of course was entitled to the land; and that James Logan had full knowledge of this equity before he received his deed.
The answers of David and James Logan contest the title of the complainants—deny all fraud—James devices notice of the pretended equity of the complainants—and both rely upon lapse of time.
The court below decreed a perpetual injunction; and that James Logan should convey the land; from which decree this appeal is prayed.
Various questions have been made in argument; but we are compelled to turn the cause on a point not debated at the bar.
It is obvious that the heirs of Richard Steele, to entitle them to the benefit of the ancient decree against David Logan, or of that decree or the original equity against James Logan, must shew themselves entitled to the claim of Bernard McNitt. To do this, they have produced the record of a suit in chancery, and a decree thereon in their favor against Bernard McNitt, subsequent to his decree against David Logan, for a title to the land, and a conveyance by a commissioner, executed in pursuance thereof. This prima facia entitles them to stand in his shoes. But by their own shewing, in the same record, Bernard McNitt, long before his decree, had conveyed away his title in the land, to his son, Joseph McNitt, jun. and the deed is produced It is then clear that the decree which he afterwards procured against David Logan, and his conveyance by a commissioner, made in pursuance thereof, must inure to the benefit of his son Joseph, and from Joseph a title thereto must be derived, To surv a title from Joseph, they exhibit a writing purporting to be a conveyance from Joseph to their ancestor, Richard Steele.
Conveyance to the grantor subsequent to his deed conveying to another with warranty inures to the benefit of his alienee.
Where the deed purports to be made by agents, and the derivation of title contested, their authority must appear in the proofs.
It is true this writing bears date previous to the date, of the conveyance from Bernard to Joseph; but on this circumstance no formidable objection be founded. For his having conveyed to Richard Steele before he had title himself, the subsequent ti» fie thereafter acquired from Bernard, his father, must inure to the benefit of Richard Steele, who held his conveyance with warranty against himself, In like manner, the decree of Bernard, thereafter procured, and his conveyance executed in pursuance thereof, might be construed to inure to the benefit of bis son Joseph, and through him to Richard Steele.
But the conveyance from Joseph McNitt, the younger, purports to be executed by agents, and there is not the least proof of the authority of the agents, and no letter of attorney to them. Against Joseph, the heirs of Steele have no decree, and he was not party to the suit in which they obtained a decree against Bernard McNitt, and of course, his interest is not affected by the decree. Nor was either David or James Logan a party to the decree of Steele’s heirs against Bernard McNitt; James was not named as defendant in the bill. David was named in the bill and answered it; but afterwards, an entry was made upon record, that the legal title was gotten from him by virtue of a commissioner’s deed to Bernard McNitt, and they therefore, discontinued the suit, as to him, before any decree. However his conscience may be affected by any notice of that suit, his rights are not, and can not be concluded by any decree rendered after they have dismissed him. From any thing then that appears, Joseph McNitt, the younger, is still entitled both to the equity and law of the title derived from David Logan, under the decree against him in favor of Bernard McNitt. The title thus set up by the Steeles, under their decree against Bernard McNitt, does not appear to be free from other objections; bat the one we have noticed is so radically fatal, that we have not thought it necessary to notice others.
Decree and Mandate.
The decree must be reversed with costs, and the cause be remanded with directions to dissolve the injunction, and to dismiss the bill, as to both defendants, with costs.